IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERYL WINBERRY PLAINTIFF

v. Civil No. 10-2119

MICHAEL J. ASTRUE, Commissioner
Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Sheryl Winberry, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for a period of disability, disability income benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. **Procedural Background**:

The plaintiff filed her application for DIB and SSI on March 5, 2008, alleging an onset date of January 1, 2006, due to depression, thyroid problems, fatigue, a pinched nerve in her right shoulder, possible carpal tunnel syndrome on the right, migraines, and dyslexia. Tr. 146-152, 153-155, 170, 174, 183-184, 205, 213-214, 227. Her applications were initially denied and that denial was upheld upon reconsideration. Tr. 80-82, 83-86, 90-91. Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ"). An administrative hearing was held on September 16, 2009. Tr. 17-52. Plaintiff was present and represented by counsel.

At this time, plaintiff was 35 years of age and possessed a high school education. Tr. 25. She had past relevant work ("PRW") experience as a delivery driver, home health aide, and leasing agent. Tr. 27, 41-43, 175, 180, 193-200, 235. At the time of the hearing, Plaintiff was volunteering several days per month as the county coordinator for Community Emergency Response Team. Tr. 31- 32. In this role, she coordinated other people to provide first aide, parking, and other services. Tr. 32.

On September 17, 2009, the ALJ found that plaintiff's depression, anxiety, mild degenerative disk disease of the lumbar spine, fibromyalgia, chronic pain in the right shoulder and knee and attention deficit hyperactivity disorder ("ADHD") were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr.62-65. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff could perform light work that does not involve climbing scaffolds, ladders or ropes; requires only occasional climbing ramps and stairs, stooping, kneeling, crouching, crawling, and reaching overhead with her upper right extremity; and involves no more than frequent balancing and reaching in all directions with her upper right extremity. From a mental perspective, Plaintiff was also limited to routine, repetitive, unskilled work that could be learned by rote with few variables, required very little specific vocational preparation or judgement, could be learned in 30 days or less, and involved only non-complex, simple instructions. Tr. 65-70. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a cashier, mail clerk, and housekeeper. Tr. 71.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 6, 2010. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case

is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 9.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

AO72A
(Rev. 8/82)

1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III. Discussion:**

Of particular concern to the undersigned is the ALJ's failure to conclude that Plaintiff's personality disorder constituted a severe impairment. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1507, 404.1527.

AO72A
(Rev. 8/82)

"A personality Disorder is an enduring pattern of inner experience and behavior that deviates markedly from the expectations of a individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time, and leads to distress or impairment." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-R 685-690 (2000 4th Ed). Personality Disorder not otherwise specified is a category reserved for disorders of personality functioning in which features of more than one personality disorder are present that do not meet the criteria for one specific personality disorder, but that collectively cause clinically significant distress or impairment in social or occupational functioning.

In the present case, we note that at least three psychologists have diagnosed Plaintiff with personality disorder. On April 7, 2008, Plaintiff underwent a mental diagnostic evaluation with Dr. Kathleen Kralik. Tr. 254-260. Plaintiff complained of inadequately managed pain and thyroid issues with associated depression. Social anxiety had allegedly been a lifelong issue, but her tendency to catastrophize as a way of manifesting personal preferences made it difficult to establish the actual impact such symptoms had on her occupational functionality. Dr. Kralik diagnosed Plaintiff with provisional ADHD, depressive disorder not otherwise specified (likely underlying dysthymia exacerbated by personality issues, situational stressors, and medical factors), anxiety disorder not otherwise specified, parent-child relational problems, and personality disorder. She also assessed Plaintiff with a GAF of 45-55, finding her to have a somewhat impaired capacity to carry out activities of daily living and daily adaptive functioning, communicate and interact in a socially adequate manner, cope with the typical mental/cognitive demands of basic work-like tasks, and complete work-like tasks within an acceptable time frame. Further, her ability to attend and sustain concentration on basic tasks and sustain persistence in

completing tasks seemed problematic. However, Dr. Kralik found Plaintiff's ability to communicate in an intelligible and effective manner to be generally adequate. She concluded that Plaintiff's ADHD like symptoms, personality issues, and child management issues likely had the most negative impact on her occupational functioning. Tr. 254-260.

On September 8, 2008, Susan Smith, a counselor at Western Arkansas Counseling and Guidance Center, completed a form for social security indicating that Plaintiff had been involved in individual therapy and medication maintenance since January 2007. Tr. 413. She rated her compliance with treatment as moderate for medication management and relatively poor concerning individual therapy. Ms. Smith indicated that Plaintiff could take care of herself and her basic needs. She did not care for her home appropriately, but was able to cook, shop, do laundry, and generally meet those needs without prompts or assistance. Plaintiff had also been head of a volunteer training program for the First Responders and Emergency Response teams of Crawford County a maximum of two days per month. However, Plaintiff had few friends. She exhibited some personality traits that made it difficult for her to develop deeply emotional relationships, but she was able to communicate and socialize on a superficial basis. Tr. 413.

On January 15, 2009, Plaintiff underwent a psychological evaluation with Dr. Robert Spray, Jr. Tr. 421-427. Plaintiff stated that she had begun counseling when her parents divorced, but denied any inpatient treatment. She had previously been prescribed medications, but could not remember their names. At current, Plaintiff reported seeing John Skelly a licensed professional counselor, at Day Springs. She was being treated for depression, but did not know her exact diagnoses. Her current medications included Tramadol (moderate to moderately severe pain), Cyclobenzaprine (muscle relaxer), Gabapentin (pain associated with burning, stabbing

AO72A
(Rev. 8/82)

aches and pains), Darvocet N (mild to moderate pain), and Lexapro (depression/generalized anxiety disorder). Tr. 421-427.

Dr. Spray diagnosed Plaintiff with mood disorder not otherwise specified and personality disorder not otherwise specified. He noted that she appeared to be functioning in the low average range of intellect and reading on a tenth grade level. She was depressed and anxious, as well as easily overwhelmed with a negative self regard. Plaintiff was resentful, pessimistic, and cynical. She felt that her physical and emotional problems had not been adequately addressed and now seemed to take the stance that it was futile to seek further help with this. Nevertheless, she had sought out counseling to learn to cope. Dr. Spray recommended that she continue counseling at Day Springs, have a psychiatrist take a look at her medication regimen, and participate in family therapy if her son was to be returned to her custody. Tr. 421-427.

On July 15, 2008, Dr. Winston Brown completed a mental RFC assessment and a psychiatric review technique form. Tr. 386-403. He reviewed her medical records and diagnosed Plaintiff with ADHD, depressive disorder not otherwise specified, anxiety disorder not otherwise specified, pain disorder associated with psychological factors, and personality disorder not otherwise specified. He found Plaintiff to be moderately limited with regard to carrying out detailed instructions, maintaining concentration for extended periods, sustaining an ordinary routine without special supervision, completing a normal work-day and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in work setting, and setting realistic goals or making plans independently of others. He also noted

that Plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote with few variables and involved little judgment, and the supervision required was simple, direct, and concrete. Tr. 386-403. This assessment was affirmed by Dr. Dan Donahue on September 23, 2008. Tr. 419.

On September 4, 2009, John Skelly, a counselor at Day Springs, completed a mental medical source statement indicating that Plaintiff had marked limitations with regard to completing a normal workday and workweek without interruption from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, traveling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others. Tr. 513-515. He also noted moderate limitations in maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted by them, making simple work related decisions, and accepting instructions and responding appropriately to criticism from supervisors. Mr. Skelly stated that Plaintiff was not limited greatly, however, she did get very anxious and defensive when being supervised by bosses. He stated that Plaintiff worked well at her own pace, but she tired easily and often felt disrespected and judged unfairly. Mr. Skelly indicated that Plaintiff suffered from physical pain and a mood disorder, resulting in mood fluctuations that varied from highly engaged to highly angry and withdrawn. He stated that she was working to manage those highs and lows. Mr. Skelly indicated that her capacity for employment was marginal. Tr. 513-515.

In spite of this evidence indicating that Plaintiff was suffering from a personality disorder, the ALJ failed to make any findings regarding the severity of this impairment. We note

AO72A
(Rev. 8/82)

that Plaintiff was also diagnosed with depression and anxiety and prescribed a variety of anti-depressants to no avail. Individual therapy for depression also failed to prove successful in treating her condition. And, while we note that one psychiatrist labeled her as a help rejecting complainer, this could actually provide further support for severe limitations related to her personality disorder, as opposed to just evidence that she was resistant to or noncompliant with treatment. It is not uncommon from persons suffering from a personality disorder to not realize they have a personality disorder because their way of thinking and behaving seems perfectly natural to them. *See* Mayo Foundation for Medical Education and Research, *Personality disorders*, *at* www.mayoclinic.com (June 16, 2011). Clearly, this factor that should have been considered by the ALJ.

Further, the ALJ seemed to be swayed by notations from the various psychologists indicating that Plaintiff appeared to exaggerate during her evaluations. However, this too, could provide further support for a finding that her personality disorder was severe, rather than undermine her credibility regarding the severity of her mental impairment. One of the characteristics of a person suffering from histrionic personality disorder is exaggerated displays of emotional reactions in everyday behavior. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-R at 711. Accordingly, we believe this case should be remanded to the ALJ for further consideration of Plaintiff's diagnosis of personality disorder and its impact on her ability to perform work-related activities. On remand, specific questions should be addressed to her treating psychiatrist and counselor concerning Plaintiff's "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which

real people work in the real world," in light of her personality disorder. *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

We also note that the ALJ failed to properly consider the RFC assessment of Plaintiff's treating doctor. The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

On September 4, 2009, Dr. Stephen Carney completed a medical source statement. Tr. 510-512. He indicated that Plaintiff could occasionally lift ten pounds and frequently lift less than ten pounds. He also opined she could stand and walk for less than two hours and would be limited in her lower extremities due to chronic pain and stiffness in her right knee. Dr. Carney also found Plaintiff to be limited to occasional climbing, balancing, and crawling with no ability to kneel or crouch. She was also limited with regard to working in or near humidity/wetness, hazards, fumes, odors, chemicals, and gases. Dr. Carney indicated that vibration and wetness caused her to lose her balance and fumes and odors caused nauseation. Tr. 510-512.

The ALJ discredited Dr. Carney's assessment, stating that it was not supported by objective tests. However, an MRI of Plaintiff's cervical spine had shown some mild spondylosis and foraminal narrowing bilaterally at the C3-4. Further, Dr. Carney's examinations consistently noted pain and stiffness in various joints, edema, and a decreased range of motion in Plaintiff's right leg. The ALJ chose to ignore these findings in favor of the findings of a one time consultative examination she states was conducted by Dr. Rebecca Floyd. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who

examined the plaintiff once or not at all does not generally constitute substantial evidence). On further review of the record, Dr. Floyd conducted no such exam. This examination was actually conducted by her nurse practitioner, Marie Pham. Although Dr. Floyd's signature is stamped at the bottom of the final page of Ms. Pham's exam notes, there is nothing in the record to indicate whether Dr. Floyd's stamped signature was a mere formality or actually an acknowledgment that she had reviewed Plaintiff's examination and concurred with Ms. Pham's diagnoses. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources). Further, we note that this one-time examination was conducted in April 2008, approximately a year and a half prior to the completion of Dr. Carney's medical source statement. Medical records in this case extend through July 2009, evidencing Plaintiff's continued complaints of pain and mental impairment. And, records indicate that Plaintiff did not begin experiencing knee pain until her knee injury in October 2008, well after Ms. Pham's examination. Accordingly, we find remand is also necessary to allow the ALJ to reevaluate Plaintiff's physical RFC. On remand, if the ALJ chooses to give Dr. Floyd credit for Ms. Pham's assessment, the record should contain evidence indicating that Dr. Floyd has actually reviewed Ms. Pham's examination and concurs with her findings. Further, Dr. Floyd should also be asked to perform a more recent evaluation of Plaintiff to ensure that it takes all of her physical impairments into account.

**IV. Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

AO72A
(Rev. 8/82)

DATED this 17th day of June 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)